UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY MCCLELLON,

               Plaintiff,                  Case No. 2:18-cv-10732
                                      District Judge Avern Cohn

v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND (DE 15), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (DE 15), **GRANT** Defendant's motion for summary judgment

(DE 17), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Tammy McClellon, brings this action under 42 U.S.C. §§ 405(g),

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income (SSI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment or remand (DE 15), the Commissioner's cross-motion for summary judgment (DE 17), and the administrative record (DE 11).

### A.    Background and Administrative History

Plaintiff alleges her disability began on November 1, 2013, at the age of 44. (R. at 170.)  In her disability report, she lists a "[b]roken leg with plate and screws in ankle" as limiting her ability to work.  (R. at 192.)  Her application was denied in August 2014.  (R. at 93-105.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 106-109.)  On February 23, 2016, ALJ J. William Callahan held a hearing, at which Plaintiff and a vocational expert (VE), Kelly Stroker, testified.  (R. at 53-92.)  On May 2, 2017, ALJ Callahan held another hearing, at which John F. Kwock, M.D. testified.  (R. at 26-52.)  On July 14, 2017, ALJ Callahan issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 8-25.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 164-169, 6-7.)  However, on February 6, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ Callahan's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on March 5, 2018.

### B.   Plaintiff's Medical History

The administrative record contains approximately 305 pages of medical records, which were available to the ALJ at the time of his July 14, 2017 decision. (R. at 25, 253-557 [Exhibits 1F – 13F].)  These materials will be discussed in detail, as necessary, below.

### C.   The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2014, the application date.  (R. at 13.)[1] At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: obesity, reflex sympathetic dystrophy (RSD) of right ankle with history of open reduction internal fixation, and lumbar radiculopathy.  (*Id*. at 13-15.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 15.)  **Between Steps 3 and 4** of the sequential process, the

---

[1] Although the ALJ's decision lists the application date as May 16, 2014, the application itself is dated May 28, 2014.  (*Compare* R. at 11, 13, 21 *with* R. 170, DE 15 at 4.)

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined

that Plaintiff had the RFC:

> . . . to perform sedentary work as defined in 20 CFR 416.967(a)
> except can frequently push and pull five pounds and occasionally lift
> 10 pounds; requires a sit-stand option since she can only stand 45
> minutes at a time and up to four hours in an eight-hour workday, walk
> five minutes at a time and one hour in a workday, and sit 40 minutes
> at a time and six hours in a workday [*i.e., exertional limitations*];
> limited to occasional stooping and no balancing, kneeling, crouching,
> crawling, or climbing ramps, stairs, ladders, ropes, or scaffolds [*i.e.,
> postural limitations*]; occasional left foot controls and no right foot
> controls [*i.e., exertional limitations*];[3] no exposure to unprotected
> heights or extreme cold, heat, wetness, humidity, noise, fumes, odors,
> gases, dust, and poor ventilation; occasional exposure to fast moving,
> heavy machinery, driving, vibrating machines or tools, and hazards
> such as fast moving sharp surfaces and objects [*i.e., environmental
> limitations*]; simple, routine, repetitive work;[4] and would miss no
> more than one day of work each month.

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

[3] A job is in the light work category "when it involves sitting most of the time but
with some pushing and pulling of arm-hand or leg-*foot controls*, which require
greater exertion than in sedentary work[.]"  SSR 83-10 (S.S.A. 1983) (emphasis
added).

[4] Earlier in the written decision, the ALJ noted:  "It is also pointed out that even
though the claimant is not found to have a severe mental impairment, the residual
functional capacity below restricts the claimant to simple, routine, repetitive tasks
with no independent judgment or decision making due to complaints of persistent
pain.  Therefore, even if she had significant mental limitations, they would be
compensated already in the residual functional capacity, which makes this issue
essentially moot."  (R. at 15.)  Thus, these limitations may be considered either
physical or mental.

(*Id*. at 15-20.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 20.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as an inspector, an assembler, and a surveillance monitor.  (*Id*. at 20-21.)  The

ALJ therefore concluded that Plaintiff had not been under a disability, as defined in

the Social Security Act, since May 16, 2014, the date the application was filed.

(*Id*. at 21.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

E.    **Analysis**

Plaintiff contends that the ALJ erred in:  **(1)** considering SSR 03-02p, which provides guidance on evaluating cases involving Reflex Sympathetic Dystrophy Syndrome (RSDS) / Complex Regional Pain Syndrome (CRPS); **(2)** giving limited weight to the opinion of treating physician Jeffrey F. Parker, M.D.; and, **(3)** evaluating the RFC findings of medical expert John F. Kwock, M.D.  (*See* DE 15 at 13-23.)  The Commissioner contends that substantial evidence supports the ALJ's  assessment of Plaintiff's RSD of the right ankle and weighing of the medical opinion evidence.  (*See* DE 17 at 5-21.)

### 1.    RSDS / CRPS

Plaintiff argues that the ALJ did not comply with SSR 03-02p.  (DE 15 at 14-18.)  Generally, this ruling explains that RSDS and CRPS "are synonymous and are used to describe a unique clinical syndrome that may develop following trauma."  SSR 03-02p, 2003 WL 22399117 at *1, 2003 WL 22814447 at *1 (Oct. 20, 2003).  In addition, the syndrome "is characterized by complaints of intense pain and typically includes signs of autonomic dysfunction."  (*Id.*)  Importantly, the ruling explains that "[c]laims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment."  (*Id.* at *6.)

### a.    Step 2

The ALJ addressed RSDS / CRPS at Step 2, when he determined that Plaintiff's severe impairments, each of which is physical in nature, include RSD of the right ankle with a history of open reduction internal fixation.  (R. at 13.)  The ALJ further explained that Plaintiff's medically determinable *mental* impairments – depression and an adjustment disorder with anxiety – are *nonsevere*.  (R. at 14.) Still, the ALJ noted that "even if she had significant mental limitations, they would be compensated already in the [RFC]," by its limitation to "simple, routine, repetitive tasks with no independent judgment or decision making . . . [,]" which was applied to accommodate "complaints of persistent pain."  (R. at 15.)

### b.    Step 3

Plaintiff takes issue with the ALJ's failure to consider listings for mental disorders, "despite an explicit direction to do so in SSR 03-02p[.]"  (DE 15 at 17.) As to the Listings (or Step 3), SSR 03-02p provides:

> Since RSDS/CRPS is not a listed impairment, an individual with RSDS/ CRPS alone cannot be found to have an impairment that meets the requirements of a listed impairment.  However, the specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist.  Psychological manifestations related to RSDS/CRPS should be evaluated under the mental disorders listings, and consideration should be given as to whether the individual's impairment(s) meets or equals the severity of a mental listing.

(*Id*. at *6 (internal footnote omitted).)  It is not clear to the Court why Plaintiff feels it was necessary to consider a mental listing when the ALJ had already

determined that Plaintiff's mental impairments were nonsevere, and Plaintiff does not challenge the Step 2 findings.

At Step 3, the ALJ determined that Listings 1.02  - "Major dysfunction of a joint(s) (due to any cause)" - and 1.06 - "Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones" - were not satisfied.  (R. at 15.)  Lest there be any doubt about the opinion evidence on physical listings, the Court notes that state agency consultant Milagros Flores, M.D.'s August 20, 2014 opinion concluded that Plaintiff's chronic pain in the right ankle area, the site of a previous fibular fracture treated with ORIF (open reduction and internal fixation), is a severe medically determinable impairment (MDI) "but does not equal any listing."  (R. at 96-97, 253-257, 320.)  Also, on May 2, 2017, Dr. Kwock testified that, "[s]ingularly, her impairments would not meet a listing, nor would they, in my opinion, come to equal a listing either."  (R. at 31; *see also* R. at 486.)  While it is true that the ALJ's failed to acknowledge SSR 03-02p in the Step 3 discussion, the Court notes that Plaintiff's counsel mentioned this particular ruling when he questioned Dr. Kwock on May 2, 2017, although Dr. Kwock testified that he had not reviewed SSR 03-02p.  (DE 15 at 17, R. at 42.)  In any case, "[a]n ALJ's failure [to] cite SSR 03-2p does not constitute reversible error provided no substantial rights were affected by [the] oversight."  *Gradascevic v. Comm'r of Soc. Sec.*, No. CV 16-12998, 2017 WL 4946577, at *8 (E.D. Mich. July 31, 2017) (Whalen, M.J.)

(quotations and citation omitted), *report and recommendation adopted*, No. 16-CV-12998, 2017 WL 3866434 (E.D. Mich. Sept. 5, 2017) (Leitman, J.).  *See also Johnson v. Astrue*, No. CIV.A. H-11-563, 2012 WL 3527972, at *9 (S.D. Tex. Aug. 14, 2012) ("In the instant action, even though the ALJ did not cite to SSR 03–2p in his decision, his decision nonetheless comports with and is consistent with SSR 03–2p.  The ALJ applied SSR 96–7p in evaluating Johnson's symptoms, and both SSR 03–2p and SSR 96–7p apply the same standards. . . . Because the ALJ followed the same sequential steps and procedures, his failure to mention SSR 03–2p, does not require a remand as no substantial rights were affected by this oversight.").  In sum, even if the ALJ did not expressly cite SSR 03-02p within the Step 3 discussion, it was brought to the ALJ's attention during the May 2, 2017 administrative hearing, and the Court has no reason to believe that the ALJ improperly addressed Plaintiff's RSDS / CRPS at Step 3.

### c.    RFC determination

In cases involving RSDS/CRPS, "the documentation of medical signs or laboratory findings at some point in time in the clinical record since the date of the precipitating injury *is critical* in establishing the presence of a medically determinable impairment."  SSR 03-02p, 2003 WL 22399117 at *4, 2003 WL 22814447 at *4 (emphasis added).  In Plaintiff's case, the ALJ undertook an extensive discussion of Dr. Parker's opinion evidence and treatment records, which

included express citations to: **(a)** Dr. Parker's September 13, 2015 medical questionnaire, which listed RSD of the right ankle among Plaintiff's diagnoses; and, **(b)** a July 30, 2014 bone scan, which noted "[f]ocal asymmetric increased activity about the right ankle," and findings that "can be seen in trauma, infection or [CRPS]." (R. at 18-19, 332-333, 320.) Thus, to the extent Plaintiff contends that it is unclear whether SSR 03-02p was considered "at any subsequent step," *i.e.*, Steps 3 through 5 (*see* DE 15 at 17), the ALJ was certainly aware of Plaintiff's RSDS/CRPS as he contemplated Plaintiff's RFC.

### d.    Credibility

Plaintiff challenges the ALJ's credibility determination as "largely based on clinical findings," lacking discussion of RSDS/CRPS, and inconsistent with SSR 03-02p and case authority. (DE 15 at 14-15, 17.) As the credibility regulation provides, the SSA "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). "Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms."

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (effective June 13, 2011 to Mar. 26, 2017).  Accordingly, the SSA will consider factors such as:

   (i)     Your *daily activities*;

   (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

   (iii)   Precipitating and aggravating factors;

   (iv)   *The type, dosage, effectiveness, and side effects of any medication* you take or have taken to alleviate your pain or other symptoms;

   (v)    *Treatment, other than medication*, you receive or have received for relief of your pain or other symptoms;

   (vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

   (vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

(*Id.* (emphases added))

ALJ Callahan addressed Plaintiff's daily activities at Step 2, where he concluded that Plaintiff "is independent with activities of daily living and there are no reported limitations in this area."  (R. at 15.)[5]  In his RFC analysis, the ALJ also

_____

[5] This is consistent with state agency consultant Sheila C. Williams-White, Ph.D.'s August 6, 2014 opinion that Plaintiff was not restricted in activities of daily living. (R. at 97.)  Apparently referring to what could be considered as an introductory credibility paragraph, Plaintiff contends that the ALJ only sought to contrast her "periodic episodes of out of proportion pain" with her "activities of daily living[.]" (DE 15 at 18, R. at 16.)  With RSDS/CRPS, "[t]he degree of reported pain is often

noted that Plaintiff did not complain of calf pain until her "pain medication was going to be reduced . . . ."  (R. at 16.)  This statement appears to be supported by Dr. Parker's August 11, 2016 progress note that Plaintiff "now notes bilateral calf pains with walking ½ block or walking upstairs[,]" and "[w]e continue to gradually reduce controlled substances."  (R. at 523; *see also* R. at 19.)  The timing of these notations may suggest medicine seeking behavior, although the Court observes that there are medical record notations of "begin cutting controlled substances" as early as April 2016 (R. at 504), with "reduction of controlled substances" in May 2016 (R. at 509), "reduce oxycodone to 80/mo." in June 2016 (R. at 514), and "continue cutting controlled substances" in July (R. at 520), all of which occurred before the August 2016 complaint of calf pain (R. at 523).  However, presumably referring to Dr. Parker's November 10, 2016 progress notes, the same-day lab work and/or an apparent November 17, 2016 discharge from practice letter, the ALJ noted that, "shortly thereafter, she was discharged from treatment for testing positive for cocaine use . . . ."  (R. at 16, 542-543, 553; *see also* R. at 19.)  Putting all of this medical information together, the inference of medicine seeking behavior is reasonable.

---

out of proportion to the severity of the precipitating injury."  SSR 03-02p. However, Plaintiff's single case citation does not equal a developed challenge to the ALJ's daily activity finding.  (*See* DE 15 at 18 (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013)).)

As for side effects, on February 23, 2016, the ALJ asked Plaintiff if she had "[a]ny side effects to any of the medications you're taking, whether it be for pain, the asthma, or anxiety?" – to which Plaintiff responded, "No."  (R. at 77.)  That ALJ Callahan also took into consideration treatment other than medication is evidenced by his credibility statement, which follows a lengthy discussion of multiple pieces of opinion evidence and the office treatment records from Dr. Parker.  (R. at 16-19.)  Specifically, ALJ Callahan stated:

> . . . the claimant's statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  By way of summary, the undersigned finds the [RFC] described above is supported by the record, when considered as a whole, and especially in light of *the course of treatment and paucity of clinical deficits noted in the treatment records and examination reports*.  The evidence of record indicates that the claimant is able to perform a restricted range of sedentary exertional work.

(R. at 19-20 (emphasis added).)

Even if the ALJ was unaware of SSR 03-02p, "[a] diagnosis of RSDS/CRPS requires the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region."  SSR 03-02p2003 WL 22399117 at *2, 2003 WL 22814447 at *2.  The ruling further explains that the complaints of pain are associated with swelling, autonomic instability, abnormal hair or nail growth, osteoporosis, or "[i]nvoluntary movements of the affected region of the initial injury."  (*Id.*)  In Plaintiff's case, the ALJ acknowledged Plaintiff's testimony that

she experiences hair loss and skin sensitivity.  (R. at 17.)  The ALJ also cited

multiple instances of "no edema" and at least once instance of "+1 edema R ankle

with full ROM."  (*See* R. at 17-19; R. at 363, 369, 493, 499, 504, 514, 525, 536.)

Additionally, the ALJ noted multiple instances of unremarkable skin examinations.

(R. at 17-18, 358, 363, 514, 525. 536.)  Therefore, the ALJ's decision considered

some of RSDS/CRPS's symptoms before concluding that Plaintiff's statements

were "not entirely consistent" with the record evidence.  (R. at 19.)

Plaintiff points out that "conflicting evidence in the medical record is not

unusual in cases of RSDS due to the transitory nature of its objective findings and

the complicated diagnostic process involved."  SSR 03-02p, 2003 WL 22399117 at

*5, 2003 WL 22814447 at *5. (DE 15 at 17.)   In addition, the ruling provides that

"[c]larification of any such conflicts in the medical evidence should be sought first

from the individual's treating or other medical sources."  (*Id*.)  However, even if, as

Plaintiff characterizes it, the ALJ relied "primarily on medical evidence to discount

credibility in this case . . . [,]" the ALJ also took specific note of Plaintiff's

testimony that "she experienced many of the same symptoms while still earning

significant income doing hair and nails."  (DE 15 at 17, R. at 16.)[6]  Thus, the ALJ

had a non-medical basis for discounting Plaintiff's opinion.

---

[6] Here, the ALJ is apparently referring to:  **(1)** Plaintiff's February 23, 2016
testimony that, when she last worked in August 2015, she was doing hair and nails
out of her home and there was a difference in her ability to do hair and nails from

### e.   Opinion evidence and SSR 03-02p

Finally, Plaintiff argues that the ALJ did not reference the "wide range of opinion evidence" contemplated by SSR 03-02p.  (DE 15 at 17.)  "In cases involving RSDS/CRPS,

> . . . *third-party information*, including evidence from medical practitioners who have provided services to the individual, and who may or may not be 'acceptable medical sources,' *is often critical* in deciding the individual's credibility.  Information *other than an individual's allegations and reports from the individual's treating sources* helps to assess an individual's ability to function on a day-to-day basis and helps to depict the individual's capacities over a period of time, thus serving to establish a longitudinal picture of the individual's status.

SSR 03-02p, 2003 WL 22399117 at *7, 2003 WL 22814447 at *7. (emphases added).  Plaintiff does not identify what record evidence was missed by the ALJ.  (DE 15 at 17-18.)

This Court has previously noted that SSR 03-02p "recognizes that RSDS is *not necessarily* a chronically disabling condition . . . but rather presents differently in each patient."  *Lorencen v. Comm'r of Soc. Sec.*, No. 07-14589, 2008 WL 4725152, at *9 (E.D. Mich. Oct. 24, 2008) (Zatkoff, J., *adopting report and recommendation of* Pepe, M.J.) (emphasis added).  "The signs and symptoms of

---

2013-2015; yet, the ALJ noted that she earned approximately $11,000 in 2015 (R. at 60, 67-69; *see also* R. at 182); and **(2)** the ALJ's May 2, 2017 recollection that Plaintiff testified that "there was a loss of hair and sensitivity to the touch in her right ankle . . . [,]" (R. at 42; *see also* R. at 48).

RSDS/CRPS may remain stable over time, improve, or worsen. Documentation should, whenever appropriate, include a longitudinal clinical record containing detailed medical observations, treatment, the individual's response to treatment, complications of treatment, and a detailed description of how the impairment limits the individual's ability to function and perform or sustain work activity over time." SSR 03-02p, 2003 WL 22399117 at *5, 2003 WL 22814447 at *5.

Based on the above, the Court notes that: **(a)** the ALJ concluded at Step 2 that RSDS/CRPS was among Plaintiff's severe impairments; **(b)** the Court has no reason to believe that the ALJ improperly addressed Plaintiff's RSDS/CRPS at Step 3; and, **(c)** the ALJ was certainly aware of Plaintiff's RSDS/CRPS as he contemplated the RFC. Moreover, the ALJ appropriately considered Plaintiff's credibility, which findings "are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.,* 402 F. App'x 109, 112–13 (6th Cir.2010)). Here, as in *Lorencen*, the Court should conclude that "the ALJ had substantial evidence to show that Plaintiff was not disabled by her RSDS/CRPS." *Lorencen*, 2008 WL 4725152 at *9. *See also Gradascevic*, 2017 WL 4946577, at *8-*9 (finding the ALJ's analysis consistent with SSR 03-02p's requirements "[b]ecause the ALJ provided an adequate rationale for finding that RSDS/CRPS did not cause greater limitation than found in the RFC, much less disabling limitations[.]").

### 2. Treatment of opinion evidence and 20 C.F.R. §§ 404.1527, 416.927

The Social Security Administration's opinion evidence regulation provides that, regardless of the source, the SSA "will evaluate every medical opinion" that it receives.  20 C.F.R. §§ 404.1527(c), 416.927(c) (effective Aug. 24, 2012 to Mar. 26, 2017).  Furthermore, unless the SSA gives controlling weight to a treating source's medical opinion, the SSA will consider the examining relationship, the treatment relationship, supportability, consistency, specialization and other factors "in deciding the weight we give to any medical opinion." *Id.* "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Within his written decision, the ALJ made several assignments of weight, including:  **(a)** "little weight" to Moises Alviar, M.D.'s February 12, 2016 consultative examination (CE) report; **(b)** "little weight" to the opinion of Dr. Parker; and, **(c)** "little weight" to the August 20, 2014 opinion of state agency consultant Dr. Flores.  (R. at 16-19, 438-453, 331-337, 97.)  In addition, the ALJ discussed, but did not expressly assign weight to, the opinion of Dr. Kwock.  (R. at 17, 479-487, 557, 26-52.)

### a. Treating physician, Dr. Parker

Plaintiff challenges the ALJ's treatment of Dr. Parker's opinion(s). (DE 15 at 18-21.) The approximately 242 pages of office treatment records from Michigan Premier Internists / Dr. Parker span the period from March 13, 2013 to November 10, 2016. (*See* R. at 258-327 [Ex. 2F], 328-330 [Ex. 3F], 338-437 [Ex. 6F], 488-556 [Ex. 12F]). Dr. Parker ordered a bone scan, which was performed on July 30, 2014 and had findings consistent with "trauma, infection or [CRPS]." (R. at 320.) On September 13, 2015, Dr. Parker completed a Medical Questionnaire and a Medical Assessment of Ability to do Work Related Activities (Physical). (R. at 332-333, 335-337.) Each of these lists asthma, RSD of the right ankle and lumbar radiculopathy among Plaintiff's diagnoses. (R. at 332, 335.)

The ALJ found Dr. Parker's MSS to be "overly restrictive because Dr. Parker essentially placed the most limiting restrictions in each functional ability[,]" "not consistent with Dr. Parker's own treatment notes[,]" and unsupported by Dr. Parker's treatment records. (R. at 18, 336-337.) The ALJ acknowledged that Dr. Parker's treatment records "date back to March 2013 and fail to support the restrictions in the medical source statement." (*Id*.)[7] The ALJ also reviewed many of the records up through November 2016. (R. at 18-19.) Thus, it is clear the ALJ

---

[7] To the extent Plaintiff argues that Dr. Parker "began seeing Plaintiff as a patient in 2005[,]" the Court does not see such documents within the medical records portion of the administrative transcript, and, in any event, Plaintiff alleges her disability began on November 1, 2013. (DE 15 at 21, R. at 170.)

considered the examining and treatment relationship factors.  20 C.F.R. §§

404.1527(c)(1),(2), 416.927(c)(1),(2).

After citing the October 2016 and November 2016 progress notes, the ALJ

noted that Plaintiff had tested positive for cocaine.  (R. at 19, 536, 542-543, 553.)[8]

Then, the ALJ stated:

> Because of this, the claimant was discharged from treatment with Dr.
> Parker and has not had any other treatment since.  Overall, the
> treatment plan has always been conservative with an emphasis on
> weight loss and medication reduction (12F/17).  Furthermore, all
> reports show the pain was no more than moderate, and there were
> never any reports of medication complications or side effects
> (6F/46(12F/45).  For these reasons, no more than little weight is given
> to Dr. Parker's opinion.

(R. at 19.)  Here, the ALJ relied upon Dr. Parker's May 13, 2015, April 17, 2016,

and September 13, 2016 progress notes.  (R. at 383, 504, 532.)[9]  Therefore, the

ALJ appears to have discounted Dr. Parker's MSSs as inconsistent with his notes

of Plaintiff's progress.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally,

the more consistent a medical opinion is with the record as a whole, the more

weight we will give to that medical opinion.").  Finally, the Court notes that,

---

[8] The ALJ's decision suggests that Plaintiff tested positive for cocaine at both the
October and November 2016 visits.  (R. at 19.)  The Court's own record review
reveals that Plaintiff tested positive on November 10, 2016.  (R. at 553-554.)  The
Court does not find similar testing for October 2016.  (*See* R. at 534-539, 551-
552.)

[9] Moreover, the Court notes that Dr. Parker's September 10, 2015 plan included
home physical therapy for the right ankle RSD.  (R. at 400.)

during the administrative hearing, Dr. Parker was clearly identified as Plaintiff's primary care physician.  (R. at 36, 62, 67, 77; *see also* R. at 17.)  It is clear from the record that the ALJ was aware of Dr. Parker's specialization in internal medicine (*see, e.g.*, R. at 488, 491, 497, 523, 529, 534), 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5), and, as noted above, took into consideration the treatment relationship.

Plaintiff contends that the ALJ committed reversible error by giving Dr. Parker's opinion limited weight.  (DE 15 at 18.)  However, for the reasons stated above, Plaintiff is simply incorrect that the ALJ does not appear to have considered the "[l]ength of the treatment relationship and the frequency of examination[,]" the "[n]ature and extent of the treatment relationship[,]" or "[s]pecialization."  20 C.F.R. §§ 404.1527(c)(2)(i)-(ii),(v), 416.927(c)(2)(i)-(ii),(v).  (DE 15 at 20-21.)

### b.    Dr. Kwock

Plaintiff challenges the ALJ's treatment of Dr. Kwock's opinion(s).  (DE 15 at 22-23.)  John F. Kwock, M.D. is experienced in orthopedic surgery.  (R. at 476-478.)  At the May 2, 2017 hearing, the ALJ described Dr. Kwock's role as an "impartial expert[,]" and Dr. Kwock testified that he had not examined or treated Plaintiff, but he had reviewed Exhibits 1F through 10F.  (R. at 29.)  In the ALJ's written decision, he initially identified Dr. Kwock as an "impartial medical expert."  (R. at 11.)  Additionally, the ALJ expressly mentioned Dr. Kwock's

January 15, 2017 opinion, his April 28, 2017 opinion, and his testimony.  (*See* R. at 17, 479-487, 557, 26-52.)  In so doing, the ALJ referred to Dr. Kwock as a "medical expert" and as having "review[ed] the entire medical evidence of record[.]"  (R. at 17.)

The testimony and written decision show that the ALJ knew there was no examining or treatment relationship between Plaintiff and Dr. Kwock.  20 C.F.R. §§ 404.1527(c)(1),(2), 416.927(c)(1),(2).  In addition, Dr. Kwock testified that he was board certified in orthopedic surgery.  (R. at 29.)  Thus, even if this area of expertise was not expressly noted in the written decision, it certainly seems that the ALJ was aware of Dr. Kwock's specialty.  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

The parties agree that the ALJ erred by not making an assignment of weight to Dr. Kwock's opinion(s).  (DE 15 at 22-23, DE 17 at 17.)  However, the parties disagree on the *effective* assignment of weight to Dr. Kwock's opinion(s), with Plaintiff arguing that the ALJ gave "great weight" to Dr. Kwock's RFC findings, *i.e.*, it "implicitly outweighs" Dr. Parker's opinion, and the Commissioner arguing that the ALJ's error was harmless, because "the ALJ found Plaintiff far more limited than Dr. Kwock opined."  (*Id.*, DE 17 at 18.)

22

Here, the ALJ clearly considered Dr. Kwock's testimony.  More specifically, the ALJ's statement that Dr. Kwock "testified that the medical findings contradicted the alleged chronic pain syndrome . . ." appears to refer to Dr. Kwock's testimony that "[c]ertainly, the record does not contain any evidence that would be consistent with the currently accepted criterias [sic] for establishing the diagnosis of [CRPS]."  (R. at 17, 33.)  The ALJ then considered Dr. Kwock's MSSs, one dated January 15, 2017 and another dated April 28, 2017.  (R. at 17, 479-487, 557.)  More importantly, the Court would not characterize the ALJ's treatment of Dr. Kwock's MSSs as "implicitly outweigh[ing]" those of treating physician Dr. Parker, because the RFC determination is markedly different:

- As to exertional limitations, Dr. Kwock opined that Plaintiff could occasionally lift and carry 11-20 pounds, while the RFC's sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools[,]" and the RFC is *more restrictive* than Dr. Kwock's opinions on sitting / standing / walking.  (*Compare* R. at 15, 479-480; *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a).)  Moreover, Dr. Kwock opined that Plaintiff's medical impairments did not require a sit/stand option, yet the RFC "requires a sit-stand options since [Plaintiff] can only stand 45 minutes at a time and up to four hours in an eight-hour workday[.]"  (*Compare* R. at 15, 557.)

- As to postural limitations, Dr. Kwock's opinion was consistent with the RFC as to climbing ladders or scaffolds, crouching and crawling, while the RFC is *more restrictive* as to climbing stairs and ramps, balancing, stooping, and kneeling.  (*Compare* R. at 15, 482.)

- As to environmental limitations, Dr. Kwock's limitations as to unprotected heights and operating a motor vehicle were consistent with the RFC's limitations in these areas. Although Dr. Kwock's opinion that Plaintiff could "never" tolerate "moving mechanical parts" is at odds with the RFC's limitations permitting only "occasional" exposure to "fast moving" items, Dr. Kwock did not provide any indications about Plaintiff's ability to tolerate humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, or vibrations; yet, the RFC provides limitations in these areas. (*Compare* R. at 15-16, 483.)

In other words, setting aside Dr. Kwock's assessment that Plaintiff could never tolerate moving mechanical parts, the ALJ's RFC determination is markedly *more restrictive* than the restrictions set forth in Dr. Kwock's MSSs, which indicates that the ALJ did not assign the MSSs "great weight."

The Court recognizes that "[t]ransient findings are characteristic of RSDS/CRPS," SSR 03-02p, and that such "lack of continuity elevates the opinions of long term treating physicians—as opposed to those of one-time consultative examiner—to a particularly high level of importance . . . ." *Engberg v. Astrue*, No. 3:10CV64/RV/EMT, 2011 WL 3273959, at *9 (N.D. Fla. June 29, 2011), *report and recommendation adopted*, No. 3:10CV64/RV/EMT, 2011 WL 3273933 (N.D. Fla. July 29, 2011). However, because the Court does not view the ALJ's decision as having afforded "great weight" to Dr. Kwock's opinions, the Court is not convinced that the ALJ failed to exercise "caution" when considering the non-

examining, non-treating but record-reviewing medical expert's opinion.  (DE 15 at

23.)

### c.   Summation

Perhaps Plaintiff is curious as to whether the ALJ assigned controlling

weight to any piece of opinion evidence.  Nonetheless, Plaintiff has failed to show

reversible error in the ALJ's treatment of Dr. Parker's and Dr. Kwock's opinions.

In addition, while Plaintiff cites CE Dr. Alviar's opinion within her opinion

evidence statement of error, she does not make a developed argument that the ALJ

improperly assigned "little weight" to either the CE's opinion or to the opinion of

state agency consultant Dr. Flores.  (DE 15 at 18-19, R. at 16-17.)[10]  Therefore, the

Court should affirm the ALJ's treatment of the opinion evidence.

### F.   Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four

steps, the claimant has the burden of proof; this burden shifts to the Commissioner

only at Step Five.").  Plaintiff has not shown legal error that would upend the

ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court

---

[10] In fact, the Court notes that, in assigning "little weight" to Dr. Flores's opinion
that Plaintiff had the physical RFC to perform light work, the ALJ noted that a
sedentary RFC was more appropriate, as Plaintiff "had a limp at one point and
continues to experience problems with the right ankle[.]"  (R. at 19, 97.)

**DENY** Plaintiff's motion for summary judgment or remand (DE 15), **GRANT**

Defendant's motion for summary judgment (DE 17), and **AFFIRM** the

Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).   Failure to file specific objections constitutes a waiver of any further right

of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).   Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.   *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).   Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*   Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.   Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.   Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 26, 2019

s/*Anthony P. Patti*
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on February 26, 2019, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti